UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES STUDENT
ASSOCIATION FOUNDATION, as an
organization and representative of its
members, AMERICAN CIVIL LIBERTIES
UNION FUND OF MICHIGAN, as an
organization and representative of its
members, and AMERICAN CIVIL
LIBERTIES UNION OF MICHIGAN, as an
organization and representative of its
members,

      Plaintiff(s),

v.

TERRI LYNN LAND, Michigan Secretary of
State, CHRISTOPHER M. THOMAS,
Michigan Director of Elections, and
FRANCES MCMULLAN, City Clerk for the
City of Ypsilanti, Michigan, in their official
capacities,

      Defendant(s).
      _____/

Case No. 2:08-cv-14019

HONORABLE STEPHEN J. MURPHY, III

## **ORDER DENYING DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

On October 13th, 2008, the Court enjoined the defendant officers of the state of Michigan to restore to the state's voter rolls certain voters whose registrations were marked "rejected" after their voter IDs were returned as undeliverable, and to discontinue this marking practice in the future. Docket no. 27. The defendants recently moved for a stay of the Court's order pending their appeal, docket no. 30, and have requested expedited consideration of that motion.[1] The Court granted the defendants' motion to file excess pages in the brief supporting the stay motion, docket nos. 29 and 35, and has also carefully

---

[1] Although the defendants subsequently did file a notice of appeal, docket no. 33, the Court retains jurisdiction over this motion under Federal Rule of Civil Procedure 62(c).

considered their 34-page brief, as well as the plaintiffs' detailed response, docket no. 36. Because the arguments in the defendants' brief are mostly reiterations of the ones they originally presented in opposition to this injunction, the Court has concluded that defendants' motion will be denied, largely for the reasons stated in its opinion of the 13th. A few additional observations, however, are required to address new points raised by the defendants' brief in support of their motion to stay pending appeal.

I.

The defendants correctly point out a typographical error in the Court's October 13th order on the preliminary injunction motion. In addition to the enjoined practice, this lawsuit also involves a challenge to Michigan's practice of cancelling the registrations of voters who apply for driver's licenses in other states. At pages 12 and 13 of the Order, the Court referred to the portions of the Complaint relevant to the plaintiffs' standing to challenge each of these practices, and mistakenly transposed citations to paragraphs 73 and 88 of the original Complaint. As a result, the Order appears to treat the plaintiffs' allegations with respect to each challenged practice as somehow relevant to their standing to challenge the *other* practice.

The plaintiffs' allegations as to their standing to challenge each practice, however, are identical. As a result, the relevant of the paragraphs transposed in the Order is identical, and the error was purely typographical, having no effect on the substance of the opinion. The defendants are thus entirely correct in their presumption, on page 6 of their brief on this motion, docket no. 30, that the relevant reference was to paragraph 88 of the Complaint.

II.

To the extent that the defendants suggest that the Court was not cognizant of their provisional-balloting argument when it granted the preliminary injunction motion, they have misread the Court's order. There was never any confusion on the part of the Court that persons appearing at the polls are entitled to provisional ballots regardless of whether they present a receipt of registration.[2] The order addresses the issue of provisional ballots in footnote 12, recognizing that a voter can "always" cast a provisional ballot. October 13 Order, docket no. 27, at 30 n.12. The Court regarded the provisional ballot option as unhelpful to the defendants' case not because provisional ballots are unavailable to voters affected by the undeliverable ID practice, but because it appears that if a voter's registration is marked "rejected" pursuant to the practice, then even if he or she casts a provisional ballot, the ballot will not be counted. *Id.*

The defendants argue otherwise, citing to M.C.L. §168.523a. The statutory provision relied upon by the defendants, however, confirms rather than disproves the Court's understanding. Subsection (2) of § 168.523a states that in order to receive a provisional ballot, a voter whose name is not on the local rolls and who appears at the polls without a voter-registration receipt must "execute a sworn statement affirming that the individual submitted a voter registration application before the close of registration and is eligible to vote in the election." Subsection (3) requires polls workers to communicate this information to the local clerk. Under subsection (4), "[i]f the city or township clerk verifies the elector

---

[2] It could be argued that the Court interpreted the receipt-of-registration and provisional-balloting procedures too generously in *favor* of the defendants. The Court was of the impression that presenting a receipt of registration entitled a voter to cast a *regular* ballot, regardless of the voter's QVF status. *See* M.C.L. § 168.523a(1)(a). In their brief on this motion, however, defendants represent that this is not the case with respect to potential voters whose registrations have been marked "rejected" because their original IDs were returned as undeliverable. *See* defendants' brief supporting motion for stay at n. 8.

3

information and finds no information contrary to the information provided by the individual in the sworn statement," then on presenting one of several enumerated forms of identification the voter may cast a provisional ballot, which will be processed in a manner similar to regular "challenged" ballots. Under subsection (5), if the local clerk is unavailable when the voter is at the polls, or if the voter is unable to produce a form of subsection (4) identification, the voter's provisional ballot will be counted only if it can be "verifi[ed] after the election" by means that are unspecified, but presumably identical to the verification by the local clerk contemplated by subsection (4).

Consistent with the Court's observation in footnote 12 of its October 13th Order, this process seems to require the validity of provisional ballots to be determined by reference to the QVF. It is unclear how the local clerk could "verify" the voter's statement that he or she is a Michigan resident "eligible to vote in the election," or discover any "contrary information," except by reference to the voter's address on file in the QVF. But of course, if a voter's registration is marked "rejected" in the QVF because his or her voter ID card was returned as undeliverable, the clerk will not be able to verify the address and indeed may regard this marking as contrary information on the issue of residency. As a result, even if the potential voter were able to cast a provisional ballot, it would ultimately not be counted.

This at least appears to be the most likely application of the statutory language to these circumstances. The defendants claim that it is incorrect, and that only a voter's own lack of cooperation can prevent his or her provisional ballot from being counted. Defendants' brief, docket. no. 30, at 9-10. But they offer no explanation as to how a local clerk would be able to verify a provisional voter's address or interpret the "rejected" marking as anything but contrary information -- indeed, in their subsequent discussions of

4

provisional balloting they do not even mention the statutory requirements. *See id.* at 9-10,19. Without such an explanation, the Court was and is forced to conclude that a "rejected" QVF notation is fatal to the validity of a voter's provisional ballot, as well as to his or her eligibility to cast a regular ballot.

III.

The defendants' contention that the Court failed to recognize their argument that the undeliverable ID practice is designed to keep non-residents off the voter rolls is also based on a misunderstanding of the Order. The Court did and does recognize that "preventing non-residents from voting within its borders," Order at 39, is the primary purpose of the undeliverable ID practice. Footnote 5 of the Order, which the defendants claim reflects the Court's confusion, simply recognizes that *after* a potential voter becomes a "registrant" within the meaning of the NVRA, the voter's failure to demonstrate in-state residence *before* becoming registered is no longer a lawful ground for removing him or her from the rolls. In no way does this call into question the state's obviously important interest in preventing non-residents from ever becoming registered in the first place -- which is what the defendants claim their undeliverable ID practice actually does.

IV.

In their brief on their motion for a stay, defendants claim for the first time that the Eleventh Amendment bars the Court from ordering them to restore voters to the rolls in order to undo any harm caused by their past actions. In *Edelman v. Jordan*, 415 U.S. 651 (1974), the Supreme Court recognized that the Eleventh Amendment bars courts from hearing cases "seeking to impose a liability which must be paid from public funds in the state treasury," *id.* at 663, even when the money relief sought was characterized as equitable in nature, *id.* at 668. Clearly, the present case does not involve any payment of

5

money to persons allegedly harmed or at risk of harm from Michigan's actions.  *Edelman*, however, has been interpreted broadly, to bar not "only retroactive monetary relief, but rather *all* retroactive relief."  *S&M Brands, Inc. v. Cooper*, 527 F. 3d 500, 509 (6th Cir. 2008).

There are three obstacles to plaintiffs' proposed application of the principles of *Edelman* to this situation.  First, the typical remedy barred by the Eleventh Amendment is an injunction requiring some form of payment from the state treasury to the injured party.  But that is not the situation here.  Second, and perhaps more notably, the line between prospective and retroactive relief is known to be blurry.  Although cases such as *Edelman* and *S&M Brands* seem straightforward, in *Milliken v. Bradley*, 433 U.S. 267, 290 (1977), the Supreme Court held that a district court that the power not only to enjoin *against* segregation in public schools, but also to *require* the defendants to take affirmative steps to eliminate the negative effects that segregation had on the education of students and former students.  The Court concluded that the "compensatory" nature of the programs required by the district court "does not change the fact that they are part fo a plan that operates prospectively to bring about the delayed benefits of a unitary school system."  *Id.*

Third, and most importantly, even if the *Edelman* rule governs here, it is not at all clear that the relief ordered by the Court in this case is "retroactive."  Indeed, this case presents what may prove to be a rather unusual remedial circumstance.  To be sure, the violations of federal law with respect to which the defendants are now claiming sovereign immunity -- namely, Michigan's "rejections" of voter registrations -- all occurred in the past.  Nevertheless, the relief fashioned by the Court -- restoration to the rolls -- is addressed only toward preventing the *future* harm of disenfranchisement that may result from those violations.  The Court has not ordered and will not order the defendants to take any action

6

merely to make amends for removing names from the voter rolls, or even for any past denials of the right to vote. Indeed, the Court's understanding that merely being removed from the rolls (or facing the possibility of removal) would not even confer standing to sue unless a registrant also remained eligible to vote, and thus faced future disenfranchisement, is implicit throughout the Order and explicitly stated twice.[3] *Id.* at 24 n.8, 25-26

The question, then, is whether the Eleventh Amendment permits a federal court to order state officials to undo violations of federal law committed in the past for the sole purpose of preventing harm that may result from those violations in the future, where the violations in question did not deprive the injured persons of monetary payments and can be undone without any transfer of funds from the state treasury to those persons. The defendants' cursory invocation of the Eleventh Amendment makes no real effort to address this question. Defendants' brief, docket no. 30, at 24-25. In a motion to stay a preliminary injunction pending appeal, however, the movant bears the burden of proving his or her likelihood of succeeding on appeal. *See Summit County Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F. 3d 547, 550 (6th Cir. 2004). The defendants have not carried that burden here, and neither does the Court's independent research lead it to conclude that the Eleventh Amendment bars the relief it has ordered. Should the defendants wish to raise this argument more fully at a later stage in the proceedings, the Court will reconsider it at that time.

---

[3] With respect to the defendants' practice of sending reply cards to voters to permit the reactivation of their cancelled registrations, the Court noted that "even voters who receive the cards and return them will have been wrongfully taken off the rolls until the date that their cards are processed and their registrations are reactivated." Order, docket no. 26, at p. 30. This was intended as a reference to the possibility that an election and a disenfranchisement might have intervened between cancellation and reactivation, not a recognition that simply being removed from the rolls is any sort of cognizable harm.

Accordingly, it is hereby **ORDERED** that the state defendants' motion for a stay pending appeal is **DENIED**.

s/Stephen J. Murphy, III
Stephen J. Murphy, III
United States District Judge

Dated: October 24, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 24, 2008, by electronic and/or ordinary mail.

Alissa Greer
Case Manager